NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISRAEL DISCOUNT BANK OF NEW YORK, | :<br>:<br>: |
| Plaintiff, | :<br>: Civil Action No. 16-6258-BRM-LHG |
| v. | :<br>: |
| H.N. INTERNATIONAL GROUP, INC., | :<br>: **OPINION** |
| Defendant. | :<br>: |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an application for an Order to Show Cause with restraints filed by plaintiff Israel Discount Bank of New York ("IDB" or "Plaintiff"). (Dkt. No. 10.) Defendant H.N. International Group, Inc. ("HN" or "Defendant") opposes the application. (Dkt. No. 11.) The Court heard oral argument on October 13, 2016. For the reasons set forth below, Plaintiff's application is **DENIED**.

  **I.   BACKGROUND**[1]

This matter was originally filed on September 29, 2016 in the Superior Court of New Jersey, Somerset County under Docket No. SOM-L-1257-16 (the "State Court Action") by way of an Order to Show Cause with restraints, purportedly on an *ex parte* basis. (*See* Notice of Removal (Dkt. No. 1), at ¶ 2 (alleging "upon information and belief, Plaintiff attempted to have the Order to Show Cause entered *ex parte* on September 29, 2016…").) On October 2, 2016, HN timely

---

[1] The facts set forth in this Opinion are taken from the Parties' briefs and related filings.

1

removed this matter to this Court on the basis of diversity of citizenship pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1441(a)-(b).

On October 3, 2016, this Court held a telephonic conference and set a briefing schedule for IDB's application. (*See* Dkt. No. 6.)

IDB seeks a Writ of Replevin directing the U.S. Marshals to seize collateral in which IDB purportedly has a perfected security interest comprised of cash, checks or other remittances received by HN, inventory, equipment, and books and records and/or the proceeds thereof (collectively, the "Collateral"), as a result of HN's alleged default under a certain line letter agreement for a $5,000,000 Line of Credit, dated November 16, 2015, between IDB, as lender, and HN, as borrower, pursuant to which IDB agreed to extend loans, advances and other financial accommodations to HN (the "Loan"). (*See* proposed Order to Show Cause (Dkt. No. 10) at pp. 1-2, ¶ (a).) IDB also seeks a Writ of Attachment over HN's bank accounts at Chase Bank and Habib American Bank (collectively, the "Bank Accounts"). (*Id*. at p. 2, ¶ (b).) Finally, IDB seeks a temporary restraining order, pursuant to Red. R. Civ. P. 65, enjoining HN from transferring or otherwise encumbering its interests in the Collateral and the Bank Accounts. (*Id*. at pp. 2-3, ¶¶ (b)-(c).)

HN has been engaged in the business of selling textiles since 1999. (Certification of Nagesh Malik, dated October 12, 2016 (the "Malik Cert.") (Dkt. No. 12-1), at ¶2.) In or around 2015, HN began discussions with IDB about entering into a multi-year line of credit loan. (*Id*. at ¶ 5.)

Prior to entering into the Loan, IDB engaged Durkin Group & Associates, LLC ("Durkin") to conduct a field examination of HN as of July 31, 2015 (the "2015 Field Investigation"). (*Id*. at ¶ 6.) Whatever issues the 2015 Field Investigation revealed were resolved by the parties and the Loan closed on or about November 16, 2015. (*Id*. at ¶ 9.)

Pursuant to its rights under the various Loan documents, on or about August 10, 2016, IDB engaged Durkin to conduct a subsequent field examination of HN (the "2016 Field Examination"). (*See* Affidavit of Kevin Durkin, dated September 27, 2016 (the "Durkin Aff.") (Dkt. No. 10-3), at ¶ 3.) Steve Foti ("Foti"), a Durkin field examiner, was sent to perform the 2016 Field Examination. (*Id*.) HN claims that, while conducting the 2016 Field Examination, "HN received a report from one of its employees, Yecenia Callejas, that Foti harassed her." (Dkt. No. 12 (citing Malek Cert. at ¶ 12.) HN complained to IDB about Foti's alleged behavior and requested a new field examiner be sent, at HN's cost. (*Id*. (citing Malek Cert. at ¶¶ 14-15).) In response to HN's complaints, IDB requested Durkin send two (2) other field examiners to complete the 2016 Field Examination the following week. (*Id*.; *see also* Durkin Aff. at ¶ 5.)

While the 2016 Field Examination was ongoing, IDB requested HN's principal, Nagesh Malik, execute a personal guaranty on the Loan. (Malik Cert. at ¶ 19.) According to Mr. Malik, IDB misrepresented the document as "ministerial" and necessary to renew the Loan, and not as a "guaranty." (*Id*.)

Thereafter, IDB informed HN that Durkin allegedly had discovered problems during the 2016 Field Examination. (Malik Cert. at ¶ 21.) HN claims neither IDB nor Durkin offered HN an exit interview or provided HN with an exit interview document detailing any issues allegedly revealed during the 2016 Field Examination, as IDB and Durkin had done with the 2015 Field Examination. (*Id*. at ¶ 22.) Around the same time, HN began making substantial pay-downs on the Loan, including a payment of $120,000.00 on August 31, 2016. (*Id*. at ¶ 29.)

On September 8, 2016, IDB sent HN a letter entitled "Exit from Credit Facility" asserting the 2016 Field Examination "concluded that material accounts receivable and inventory information had been inaccurately reported by [HN] to IDB and other material accounts receivable

3

and inventory information reported by [HN] to IDB could not be verified by Durkin as being accurate." (*See* Verified Compl. (Dkt. No. 10-1), at Ex. F.) The September 8, 2016 letter asserts:

> The reporting of inaccurate information by [HN] to IDB constitutes events of default under the Loan Documents. Additional events of default have arisen due to [HN]'s failure to deliver a Borrowing Base Certificate, Accounts Receivable Aging, Inventory Reporting and Sales report for the month of July on or before August 20, 2016. As a result of the occurrence of these events of default, IDB has, among other rights and remedies, the right to terminate the Credit Facility, demand immediate payment of all Obligations and to foreclose on its Collateral.

(*Id*.) In the September 8, 2016 letter, "IDB agree[d] to allow [HN] up to sixty (60) days to repay and satisfy in full all Obligations," while retaining its rights under the Loan documents and subject to certain conditions. (*Id*.)

In the interim, HN continued to pay down the Loan, specifically, $328,933.20 in September 2016. (Malik Cert. at ¶ 31.) HN contends that, as of September 2016, the Loan was fully performing in all monetary respects, HN had never missed a payment under the Loan and, instead, paid down $448,933.20 in less than one (1) month. (*Id*. at ¶¶ 31-32.)

On September 23, 2016, IDB sent HN a Notice of Default, Acceleration and Demand for Payment in which IDB reiterated that "[e]ach instance of reporting of inaccurate information by [HN] to [IDB] constituted an event of default under the Loan Documents" and that "[a]dditional events of default have arisen" as a result of HN's alleged failure to deliver certain documents to IDB. (Verified Compl. (Dkt. No. 10-1), at Ex. G.) IDB further claimed that "[s]ince the September [8, 2016] letter, [HN] has failed to allow [IDB] to conduct a Field Examination and has failed to factor all of its accounts receivable with [IDB] or deposit all proceeds of accounts receivable and other Collateral into [HN]'s bank account maintained at [IDB]…" (*Id*.) As a result, IDB "declare[d] the entire unpaid principal amounts of the Line Letter, and all interest accrued and unpaid thereon, and all other obligations to be immediately due and payable." (*Id*.) IDB demanded

4

payment of "no less than $4,015,810.54, in immediately available funds by 5:00 p.m. on September 23, 2016". (*Id*.)

Simultaneously, IDB exercised its right to setoff the funds held by HN in accounts at IDB in the total amount of approximately $330,000.00. Following IDB's exercise of its setoff rights, as of September 27, 2016, the total amount owed under the Loan was $3,686,877.24, plus interest, fees and expenses.

Almost immediately thereafter, on September 28, 2016, IDB commenced litigation against Mr. Malik in the Supreme Court of New York on his alleged personal guaranty of the Loan. The next day, September 29, 2016, IDB filed the State Court Action now before this Court.

In its Verified Complaint, Plaintiff asserts three (3) causes of action: Replevin (Count I); Breach of the Loan Agreement (Count II); and Pre-Judgment Writ of Attachment (Count III). (*See* Dkt. No. 10-1.) IDB also seeks a temporary restraining order, pursuant to Fed. R. Civ. P. 65.

## II. LEGAL STANDARD

"Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). "A plaintiff seeking a preliminary injunction must establish that he is [1] likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Ferring*, 765 F.3d at 210 (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). The movant bears the burden of showing that these four factors weigh in favor of granting the injunction, and a failure to establish any one factor will render a preliminary injunction inappropriate. *Ferring*, 765 F.3d at 210. *See also Am.*

*Tel. & Tel. Co. v. Winback Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) (holding that a party must produce sufficient evidence of all four factors – and requiring a district court to weigh all four – prior to granting injunctive relief).

### III.     DECISION

IDB has failed to carry its burden of showing the extraordinary remedy of preliminary injunctive relief is necessary to maintain the status quo. Among other things, IDB has failed to establish it is likely to succeed on the merits of its claims and/or any possibility it would suffer irreparable harm in the absence of preliminary relief. IDB also has not established the balance of equities tips in its favor or that an injunction would be in the public interest. IDB (as the movant) bears the burden of showing all four factors weigh in favor of granting the injunction, and its failure to do so renders a preliminary injunction inappropriate. *See Ferring*, 765 F.3d at 210.

Initially, IDB has not established a likelihood of success on the merits.[2] "As a prerequisite to the issuance of an interlocutory injunction, the moving party must show a clear right to relief."

---

[2] IDB asserts causes of action for a Writ of Replevin, Attachment and breach of the Loan documents. (*See* Dkt. No. 10-1.)

Under New Jersey law, replevin is governed by N.J.S.A. 2B:50–1, *et seq.*, which provides, in pertinent part: "[a] person seeking recovery of goods wrongly held by another may bring an action for replevin.... If the person establishes the cause of action, the court shall enter an order granting possession." Pursuant to N.J.S.A. 2B:50–2(a), the court may, prior to final judgment, "after notice and hearing, and based upon filed papers and testimony, if any ... grant possession of the goods to the plaintiff" if it "finds a probability of final judgment for the plaintiff." *Gen. Elec. Capital Corp. v. Oncology Associates of Ocean Cty. LLC*, No. CIV. 10-1972 AET, 2011 WL 6179255, at *4 (D.N.J. Dec. 12, 2011); *see also Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 576 (D.N.J. 2003). In an action for replevin, "the burden [is] on the plaintiff … to establish ownership, absolute or qualified, with the right to exclusive possession at the time of bringing the action, and the failure to do so entitles the defendant to judgment." *Vida v. Ruckle Bros.*, 135 N.J.L. 570, 571 (Sup. Ct. 1947); *Mandelbaum v. Weiss*, 11 N.J. Super. 27. 30-31 (App. Div. 1950).

Pre-judgment attachment is "an extraordinary remedy, the availability of which is narrowly circumscribed by statute, [requiring] both the statute and the court rules proscribing the procedure for seeking pre-judgment attachment must be strictly construed." *In re Estate of Balgar*, 399 N.J. Super. 426, 439 (Law Div. 2007). Under New Jersey law, a writ of attachment may issue "only upon the court's finding ... that (1) there is a probability that final judgment will be rendered in favor of the plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is real or personal property of the defendant at a specific location within this State which is subject to attachment." N.J. Ct. R. 4:60-5. New Jersey law also provides the various statutory grounds for issuance of a writ of attachment. *See* N.J.S.A. 2A:26-2.

IDB asserts it is entitled to a writ of attachment under N.J.S.A. 2A:26-2 because "the facts would entitle plaintiff to an order of arrest before judgment in a civil action." (Dkt. No. 10-4, at p. 14 (citing N.J.S.A. 2A:26-2).) In

6

*Charles Simkin & Sons, Inc. v. Massiah*, 289 F.2d 26, 29 (3d Cir. 1961). To make such a showing, "[t]here must be no disputed issues of fact." *Id*. (citations omitted); se*e also Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 88 (D.N.J. 1993) ("a preliminary injunction cannot be issued when there are disputed issues of fact.") (citing *Hunterdon Transformer Co. v. Cook*, 1990 WL 10342, at *2 (D.N.J. Feb. 6, 1990) (additional citations omitted). A review of the parties' submissions shows the presence of several material fact questions, which were only confirmed by their counsel during oral argument.[3] The existence of these disputed issues of fact render IDB unable to show a "clear right to relief" and require the Court to deny IDB's application.

IDB also will not suffer irreparable harm absent preliminary relief. The party seeking injunctive relief must "make a clear showing of immediate and irreparable injury or a presently existing actual threat." *Marsellis-Warner Corp. v. Rabens*, 51 F. Supp. 2d 508, 528 (D.N.J. 1999) (quoting *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994)). The word "irreparable" "connotes that which cannot be repaired, retrieved, put down again [or] atoned for." *Acierno*, 40 F.3d at 655 (internal quotation omitted). "Within the Third Circuit, courts have found that injury

---

certain civil cases, the court may issue a *capias ad respondendum,* requiring that a defendant post bail as a way of guaranteeing the defendant's appearance. "For contract cases, a *capias ad respondendum* shall issue ... only when the proof establishes: (a) That defendant is about to remove any of his property out of the jurisdiction ... with intent to defraud his creditors; or (b) That defendant has property or choses in action which he fraudulently conceals; or (c) That defendant has assigned, removed or disposed of, or is about to assign, remove or dispose of, any of his property with intent to defraud his creditors; or (d) That defendant fraudulently contracted the debt or incurred the demand." *Sentry Ins. v. Sky Mgmt., Inc.*, 34 F. Supp. 2d 900, 904–05 (D.N.J. 1999) (citing N.J.S.A. § 2A:15–42).
    On the record before the Court, IDB has not shown a probability final judgment will be rendered in its favor and, as such, it is not entitled to either form of relief at this time.

[3] Among other things, the parties dispute whether IDB made proper demand for the Collateral, as required to maintain an action for replevin. (Dkt. No. 12, at p.p. 17-18.) HN also takes issue with IDB's evidence, particularly the Durkin Aff., arguing it is based entirely on hearsay, is wholly conclusory, and without any proper support. (*Id*. at 19-21.) Without proper proof, HN argues, IDB is unable to establish the occurrence of an event of default under the Loan, a necessary precondition to any of the relief sought. Perhaps most critically, however, the parties dispute the existence of any fraud, or even "red flags of fraud." Although the Court need not consider the evidence submitted by IDB for the first time in its reply papers, s*ee Strikeforce Techs., Inc. v. WhiteSky, Inc.*, 2013 WL 4876306, at *2 (D.N.J. Sept. 11, 2013); *Gen. Elec. Capital Corp. v. Oncology Assocs. Of Ocean Cty., LLC*, 2011 WL 6179255, at *2 (D.N.J. Dec. 12, 2011), having considered those submissions, if anything, they only create additional factual disputes. (*See* Dkt. Nos. 15-16.)

to goodwill and the use of a company's confidential information are the types of injuries which would constitute irreparable harm that cannot be compensated with money damages." *Fisher Bioservices, Inc. v. Bilcare, Inc.*, No. 06-567, 2006 WL 1517382, at *20 (E.D.Pa. May 31, 2006) (citing cases); *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) ("[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill"). On the other hand, courts universally hold that, when monetary damages are available the injury is not considered "irreparable." *See, e.g., A. O. Smith Corp. v. F. T. C.*, 530 F.2d 515, 525 (3d Cir. 1976).

This is a case about money, and money damages are available. Indeed, IDB has quantified its damages to the penny. (*See, e.g.*, Verified Compl. (Dkt. No. 10-1), at ¶ 30 (asserting damages of no less than $4,015,810.54 as of September 23, 2016 and, after setoff, in an amount of $3,686,877.24 plus interest, fees and expenses.) Any injury IDB might suffer is not "irreparable." *A.O. Smith Corp.*, 530 F.2d at 525. Notably, IDB has made no effort to show, and has not alleged, HN is (or is likely to become) insolvent or otherwise unable to satisfy any judgment it might ultimately receive. Nor is the Court persuaded by its counsel's argument, during oral argument, that, in realty, IDB is seeking possession of the Collateral in which it has a security interest and not money damages. This case is unquestionably about money, and IDB's alleged damages are unquestionably compensable with money damages.

IDB also fails to show that a balancing of the equities weighs in its favor. A balancing of the equities requires the court to determine whether the harm to the non-moving party in granting the injunction would be greater than the harm to the moving party if the injunction is not granted. "The Court cannot grant the Plaintiffs' preliminary relief when it will result in greater harm to a

8

non-moving party." *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 707 F.Supp. 2d 520, 545 (D.N.J. 2010). The Court has already determined IDB is not likely to face irreparable harm in the absence of preliminary relief. Moreover, at oral argument, IDB's counsel essentially conceded that, if preliminary relief were granted, HN's business would effectively be destroyed. This concession alone requires IDB's application be denied. S*ee Duraco Prod., Inc. v. Joy Plastic Enterprises, Ltd.*, 40 F.3d 1431, 1437 n.4 (3d Cir. 1994) (holding that an injunction should be denied if it "would destroy [the non-moving party's] entire business"); *Scherman v. Stern*, 93 N.J. Eq. 626, 631 (E&A 1922) ("Acts destroying a complainant's business, custom, and profits do an irreparable injury.")

**IV. CONCLUSION**

For the reasons set forth above, Plaintiff's application for an Order to Show Cause with Restraints is **DENIED**. An appropriate order will follow.

**Date: October 14, 2016**               */s/ Brian R. Martinotti*
                                         **HON. BRIAN R. MARTINOTTI**
                                         **UNITED STATES DISTRICT JUDGE**